DANIEL SUTTER, JR., complainant,

v.

SECURITY TRUST COMPANY, defendant.

[Decided October 11th, 1923.]

1. Where a check drawn upon a bank was certified by the bank at the request of the drawer, and delivered to the payee, and on the next business day the drawer of the check requested the bank to stop payment, and the payee, after having been refused payment, endorsed the check and delivered it to another (her brother-in-law) who deposited the check in his bank to his credit, and when the check was presented in due course at the bank on which it was drawn, and payment being refused, was duly protested and afterwards was paid to the person to whom it had been endorsed upon his signing a written statement to the effect that the check had been accepted by him for full value and without notice, and that he was an innocent purchaser thereof, and would so testify if called upon to do so, under the Negotiable Instrument act of New Jersey the effort to stop payment of the check by the drawer could be properly disregarded if the written statement above mentioned was true.

2. Where the holder of the check is not an innocent holder for value without notice, such holder enjoys no rights against the bank not enjoyed by the payee of the check.

3. In order to recover, in a suit by the drawer of the check against the bank—the bank having paid the endorsee with notice—the drawer must establish by adequate evidence that the check was procured by the payee by fraud, or that the payee had no right to enforce it, as against the drawer, and on failure to to this he will be denied relief in this court.

On bill, &c.  On final hearing.

This suit is an action at law brought in the supreme court by plaintiff against defendant and by the supreme court transferred to this court because of equitable defenses asserted by the answer.

On Saturday, March 25th, 1922, a check was drawn on the Security Trust Company, a corporation of this state main-

taining a banking department, by Daniel Sutter, Jr., for $1,000, and on that day, at the instance of the drawer, the check was certified by the trust company, plaintiff at that time having an adequate checking account with that company. Thereafter, and on that day, the check was delivered by the drawer to the payee. On the following Monday morning, March 27th, the drawer of the check requested the trust company to stop payment. On that day the payee named in the check, after being refused payment by the trust company, endorsed the check and delivered it to Edwin R. Mack, a brother-in-law, and Mr. Mack then deposited the check to his credit in his bank in Philadelphia. The check reached the Security Trust Company March 30th, and payment being refused and the check was duly protested—the protest certificate stating that the answer to the demand for payment was "payment stopped." On April 6th the check was paid by the trust company to Mr. Mack upon his signing a written statement to the effect that the check had been accepted by him for full value and without notice and that he was an innocent purchaser of it and that he would so testify if called upon to do so.

This suit was then brought by the drawer of the check against the trust company to recover from it the amount for which the check was drawn.

*Mr. Herbert S. Kille,* with whom was associated *Mr. William J. Kraft,* for the complainant.

*Mr. Thomas E. French,* with whom was associated *Mr. Samuel H. Richards,* for the defendant.

LEAMING, V. C.

By our Uniform Negotiable Instruments act a check is defined as a bill of exchange drawn on a bank, payable on demand, and it is there declared that, except as therein otherwise provided, the provisions of the act applicable to

a bill of exchange payable on demand shall apply to a check. *3 Comp. Stat. 3755 § 185.* By section 187 of that act the certification of a check by a bank on which it is drawn is made equivalent to an acceptance, and by the following section it is provided that where the holder of a check procures it to be certified the drawer and all endorsers are discharged from liability thereon. A holder "in due course" is defined by section 52 of the act and by section 57 his rights are declared to be free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and that he may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

From these provisions of our act, as well as by the accepted law prior to their enactment, it is clear that had Mr. Mack been a holder of this certified check in "due course" no defenses to his demand for its payment would have been available to the trust company or to the drawer, and any demand of the drawer upon the trust company for payment to be stopped could properly have been disregarded.

But the evidence in this case satisfies me that Mr. Mack was not a holder in due course and enjoyed no rights as against the trust company not enjoyed by the payee of the check. The truth touching the transaction between the payee and Mr. Mack is too obvious to be hidden by mere words. White cannot be made black even by testimony. I fully believe the truth to be that Mr. Mack did not take the check from the payee in good faith or for value or for his own use, but that he in fact took the check merely to collect it for the payee, and did so not only well knowing that the trust company had refused to pay her, but also knowing why; and that when he got the money on the check by representing himself to be a holder in due course he paid it to her, or to her father for her, pursuant to his original plan. I refuse to do Mr. Mack the injustice to believe that during the period when he was generously contributing to the aid of his sister-in-law he seized upon her misfortune to collect for himself his former contributions to her needs, and that when their re-

lations were wholly unchanged and at the very hour when her needs were necessarily the most pressing.

This view necessitates the inquiry whether the trust company was privileged to pay the check to the payee, as against the drawer of the check—the plaintiff herein.

As already stated the check was certified by the trust company at the request of the drawer and before its delivery to the payee. Plaintiff further now claims that the check was procured from him by the payee by means of fraudulent conduct on her part. With these two elements concurring the case clearly falls squarely within the principles stated ·in *Times Square Auto Co.* v. *Rutherford National Bank, 77 N. J. Law 649.* There the check was given to the automobile company for the purchase price of an automobile and was certified by the bank at the request of the automobile company. The bank subsequently refused payment at the request of the drawer of the check and suit was thereafter brought against the bank on its contract of certification. The bank sought to defend on the ground that the purchase of the car had been induced by false representations of the manager of plaintiff. That defense was allowed by the trial court. On appeal it was held that where the certification of the check is at the instance of the payee or holder of a check the certification is operative to discharge the drawer from further liability on the check and to substitute a new contract between the holder of the check and the bank, and no defense of the nature stated is available. But it is there further set forth that when the certification of the check is for the drawer before delivery of the check such certification "does not operate to discharge the drawer, and so long as the drawer remains undischarged, such a defense as that set up in the present case is open both to him and to the bank." While this latter statement may be said to have been unnecessary to the judgment of reversal there entered, it is yet a well-considered and specific statement of the views of the members of our court of last resort and cannot be properly disregarded here.

It is thus apparent that the payment of this check by the trust company denied to plaintiff the privilege of asserting his defense to its payment. Upon that theory, if any, the present suit must be sustained.

It is urged by defendant that *State* v. *Scarlett, 91 N. J. Law 200,* is inconsistent with the *Rutherford Bank Case* already referred to. On the contrary, the opinion of the court in *State* v. *Scarlett* gives specific recognition to the statement in the earlier case that the discharge of liability of the drawer of a check to the holder may depend on whether the certification has been made by the bank at the request of the drawer of the check before it is issued, or at the request of the holder after the check is issued. But it was held that where the inquiry is simply one of overdraft by the drawer of the check the certification by the bank at his request may be deemed the equivalent of payment. Nor is *First National Bank* v. *Whitman, 94 U. S. 343,* cited by defendant, in point. The question there was merely one of privity between a bank and the payee of a check; it was held that a certification of the check created such a privity whether the certification was at the instance of the drawer or the payee.

But notwithstanding the views already stated to the effect that defendant has rendered it impossible for plaintiff to assert any defense against the payment of the check, it is yet clear that any recovery herein against the trust company for so doing must be based upon losses in fact sustained by plaintiff by reason thereof. The suit is in form and effect for the recovery of such damages. It is accordingly essential to plaintiff's recovery that he establish by adequate evidence his claim that the check was procured by the payee by fraudulent means or that it was held by the payee without right to enforce its collection from plaintiff. In that plaintiff has failed. Just what the check was given for does not clearly appear by the evidence. The utmost that appears is that the conduct of the payee after the check was delivered to her was reprehensible and injurious to plaintiff. No counterclaim against her for damages could have been assessed or

sustained on the evidence given, and fraudulent procurement of the check has not been established by the evidence. Indeed, the engagements of the parties at the time the check was given or for which the check was given are not fully disclosed by the evidence. Whether the misconduct of the payee which has been referred to was touching or in any way connected with any matters for which the check was given does not specifically appear. If fraud is relied on to vitiate the vitality of the check, that fraud must be shown to have been fraudulent procurement of the check as distinguished from a breach of contract after the check was given. It is accordingly impossible for this court to determine at this time upon the evidence before it that any damages were suffered by plaintiff by a denial of his right to defend against the check in the hands of the payee. It seems clear that in a suit to recover damages from the trust company for paying the check the burden rests upon plaintiff not only to establish facts adequate to disclose that a successful defense in whole or in part could have been made by him to a suit on the check, but also facts affording a basis upon which the amount of loss so suffered, if any, could be ascertained.

This view renders it unnecessary to consider the claim of the trust company that plaintiff's request was for merely a deferment of payment for a few days to enable him to adjust matters with the holder of the check, or the further claim that the written request to stop payment of the check expressly gave the trust company an option not to do so.

A decree will be advised denying relief to plaintiff.